[Cite as *State v. Napier*, 2011-Ohio-4956.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 96211**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## HAROLD NAPIER

DEFENDANT-APPELLANT

**JUDGMENT:**
**AFFIRMED**

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-538363

**BEFORE:** Kilbane, A.J., Jones, J., and Keough, J.

**RELEASED AND JOURNALIZED:** September 29, 2011

**ATTORNEY FOR APPELLANT**

Kelly A. Gallagher
P.O. Box 306
Avon Lake, Ohio 44012

**ATTORNEYS FOR APPELLEE**

William D. Mason
Cuyahoga County Prosecutor
Andrew J. Santoli
Assistant County Prosecutor
The Justice Center - 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113

MARY EILEEN KILBANE, A.J.:

{¶ 1} Defendant-appellant, Harold Napier, appeals from his conviction for robbery. For the reasons set forth below, we affirm.

{¶ 2} On July 2, 2010, defendant was indicted for one count of robbery in violation of R.C. 2911.02(A)(2), with a notice of prior conviction and a repeat violent offender specification, and one count of robbery in violation of R.C. 2911.02(A)(3). Defendant pled not guilty to the charges. On November 1, 2010, the matter proceeded to a jury trial on the robbery charges. The notice of prior conviction and repeat violent offender specification were tried to the court.

**{¶ 3}** Idel Cotto (Idel) testified that in June 2009, he lived at 4482 West 145th Street with his wife, Cindy, and their children. Sylvia Conway (Conway) and William Harris (Harris) lived next door at 4486 West 145th Street. The families got along, and the Cottos' 13-year-old son, Andrew, spent time with Conway's 13-year-old son, Brian. By the end of summer of that year, Conway's brother, the defendant, who was called "Nate," moved into the Conways' home. According to Idel, defendant obtained Cindy's phone number from Andrew, and he began calling her. He then began coming to the Cotto home uninvited. Idel stated that Cindy had called him at work to report that defendant was knocking on their door. On other occasions, Idel heard defendant make inappropriate remarks to Cindy, including one instance that occurred while Cindy was in the driveway retrieving something from her car. Idel then told the defendant to leave Cindy alone. According to Idel, defendant denied any wrongdoing and stated that they could go to the park to settle the matter. At this point, Idel and Cindy went inside their home and closed their door. After this incident, the Cottos were no longer on good terms with Conway and defendant.

**{¶ 4}** By April 2010, the Cottos had purchased a home. On May 16, 2010, the date of their move from West 145th Street, they went to the grocery store. Upon their return, Idel saw Conway's son, Brian, standing in their driveway and looking toward Puritas Avenue. Idel next observed defendant coming out of their garage carrying something. Defendant then dropped this object, pushed Cindy to the ground, and fled over a backyard fence. Idel looked into Conway's backyard and saw various items that

he kept inside his garage, including a propane tank, shovels, a jack, and other tools. Idel stated that he had never given Conway or the defendant permission to take his property.

{¶ 5} Cleveland police officers arrived, and Idel and one of the officers obtained permission from Harris to search for other property belonging to the Cotto family. They then found their lawnmower on the side of the garage and other property inside the garage.

{¶ 6} On May 19, 2010, Idel identified defendant from a police photo array and gave police a written statement.

{¶ 7} Idel admitted on cross-examination that Cindy sometimes goes out with friends, but he denied that the couple had marital problems or that Cindy had ever gone out with defendant.

{¶ 8} Cindy testified that she ran a certified in-home daycare business from her home until 2010. After defendant moved in with Conway, he approached her and asked if she would hire him for lawn care. He then obtained her phone number and repeatedly called her. Cindy further testified that when she would leave her house, defendant would follow her to her car and call her repeatedly. She acknowledged that she had once called him by mistakenly hitting a last number redial function on her phone, and had also called him once to check on her son who was at the Conway home. Phone records indicated that defendant had called Cindy 27 times, and that Cindy had called a telephone issued to Conway six times. She acknowledged that she had sent him a text message on April 9, 2010, in which she indicated that she was going out, but stated that she had

sent it in order to keep him from coming to her home. On April 21, 2010, she sent him two additional texts, one just set forth his phone number and the other stated "stop calling me[,] leave me alone[.]"

{¶ 9} Cindy further testified that defendant repeatedly made inappropriate remarks to her and had also done so in front of her two-year-old child. Cindy told the defendant to leave her alone and also asked her husband to say something to him. At that time, defendant denied making inappropriate comments. She further stated that she did not contact the police because she was afraid that it would create greater problems and because they had decided to move. After the April 21, 2010 text message instructing him to leave her alone, she and her friend, Pam Sieki, were at a bar and defendant confronted her.

{¶ 10} With regard to the events of May 16, 2010, Cindy testified that as she, Idel, and their 16-year-old daughter returned home from the grocery store, she observed two individuals in her garage and a wheelbarrow loaded with their belongings. Cindy jumped out of the car and confronted the men. One of the men fled through the side door of the garage, which had been removed from its hinges. Defendant fled through the front of the garage and, as he headed toward a fence, Cindy stood in his way. At that point, defendant pulled her by her ponytail and slammed her to the ground. Cindy further testified that a clump of her hair came out, and she sustained bruises and scratches to her left leg and knee. She stated that she had never given defendant or anyone else residing at 4486 West 145th Street permission to take her property.

{¶ 11} Cindy called the Cleveland police and reported the incident, identifying the assailant as her neighbor's brother, Harold a.k.a. Nate. She further testified that defendant and the other man removed gutters and the metal track that held the garage door. Later, after the police arrived, various items that had been in her garage were recovered from the Conways' backyard. Several days later, she identified defendant from a photo array and also gave a statement to police.

{¶ 12} Cindy admitted on cross-examination that she had also called the Department of Children and Family Services to report that she had seen defendant selling drugs earlier in the day on May 16, 2010, but she did not make this allegation to police because she did not have proof. She also admitted that she had reported that Conway had become aggressive with her following this incident.

{¶ 13} Cleveland Police Officer Richard Delvecchio testified that he responded to the scene. At this time, Cindy was crying and indicated that she had seen her neighbor, Nate, and another man taking property from her garage, and that Nate grabbed her ponytail and threw her down. Officer Delvecchio's supervisor, Sergeant Stanton, arrived on the scene and obtained permission from Harris to search the 4486 West 145th Street property for defendant and to look for the Cottos' property. The officers subsequently photographed various items, including tools and a lawnmower, strewn in the Conway yard that reportedly belonged to the Cottos. The Cottos then retrieved these items without objection from Harris or Conway.

{¶ 14} Detective James Holt testified that on May 17, 2010, he conducted a follow-up investigation in the matter. Both Cindy and Idel identified defendant from photo arrays and gave written statements to the police.

{¶ 15} The State and the defense stipulated that defendant was convicted of aggravated robbery in 1987.

{¶ 16} The defendant presented the testimony of Robert Taylor, an investigator, and Conway. Taylor testified that he photographed the Cottos' garage and obtained records of text messages that Cindy had sent to a phone registered to Conway.

{¶ 17} Conway testified that she lives on West 145th Street in Cleveland, and the Cottos had been her next door neighbors. According to Conway, Harris and the defendant regularly came to her house to care for her and take care of her property. Defendant was at her home daily. She testified that defendant did not live with her and never stayed overnight at her home, but she allowed him to use one of her two cell phones in order to contact him.

{¶ 18} She further testified that her son and one of the Cottos' sons were friends. In addition, according to Conway, Cindy often spoke with defendant on her porch, asked him to spend time with her, went outside when defendant was outside, and arranged to meet defendant at various places. Prior to May 16, 2010, Idel confronted defendant and demanded that he stay away from Cindy.

{¶ 19} Conway was at the hospital for much of the day on May 16, 2010, and did not witness any of the events at issue. She denied that she had behaved aggressively to

Cindy, and she stated that following Cindy's allegations regarding drugs at Conway's residence, county investigators interviewed her but found no evidence to substantiate these allegations.

{¶ 20} On November 5, 2010, the jury found defendant guilty of both counts of robbery, and the court found him guilty of the notice of prior conviction and repeat violent offender specification. The court sentenced defendant on December 7, 2010. The court merged the robbery convictions and the State elected to proceed to sentencing on the charge of robbery under R.C. 2911.02(A)(2). The court then sentenced defendant to seven years of imprisonment, plus three years of mandatory postrelease control. He now appeals and assigns the following error for our review:

> **"Mr. Napier's convictions for robbery were against the manifest weight of the evidence."**

{¶ 21} In determining whether a conviction is against the manifest weight of the evidence, the appellate court sits as a "thirteenth juror" and disagrees with the factfinder's resolution of the conflicting testimony. *State v. Thompkins,* 78 Ohio St.3d 380, 387, 1997-Ohio-52, 678 N.E.2d 54, citing *Tibbs v. Florida* (1982), 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652. The reviewing court must examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether the jury "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." Id., quoting *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717.

**{¶ 22}** The appellate court may not merely substitute its view for that of the jury, and reversal on manifest weight grounds is reserved for "the exceptional case in which the evidence weighs heavily against the conviction." Id., quoting *Martin*.

**{¶ 23}** In this matter, after examining the entire record, weighing the evidence and all reasonable inferences, we are unable to conclude that the court clearly lost its way and created such a manifest miscarriage of justice in convicting defendant of the offense of robbery. The State presented eyewitness testimony from Idel and Cindy that upon their return from the grocery store on May 16, 2010, they both observed defendant removing items from their garage, and that when Cindy attempted to block his path, he grabbed her by the hair and threw her to the ground. The State demonstrated that following the arrival of the police, the Cottos' property was found strewn about the Conway yard, and that the Cottos had not given Conway, defendant, or any resident of 4486 West 145th Street permission to take their property. Further, although defendant insists that Cindy did not sustain physical harm, the record indicates that defendant pulled out a clump of her hair and that he slammed her down, scratching and bruising her left side and left leg. We therefore conclude that the jury did not lose its way in convicting defendant of robbery in this matter.

**{¶ 24}** The assignment of error is without merit and is overruled.

Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

_____
MARY EILEEN KILBANE, ADMINISTRATIVE JUDGE

LARRY A. JONES, J., and
KATHLEEN ANN KEOUGH, J., CONCUR